## CONNER *v.* PIONEER FIRE-PROOF CONST. Co.

*(Circuit Court, D. Minnesota.* December 16, 1886.)

1. NEGLIGENCE—DEFECTIVE SCAFFOLDING—CONFLICT OF TESTIMONY—VERDICT —MOTION FOR NEW TRIAL.

In an action to recover damages for a personal injury, caused by the negligence of the defendant in not providing safe scaffolding for plaintiff to stand upon while tiling a ceiling, where the testimony of a number of witnesses for defendant is that the tilers who used them built the scaffoldings, and a less number, for plaintiff, testified positively that defendant employed two persons for the special purpose of building the scaffoldings, *held,* that there was sufficient evidence to justify the jury in finding defendant responsible for the defective scaffolding.

2. SAME — PLEADING — SPECIAL DAMAGES — EVIDENCE — WAGES BEFORE AND AFTER INJURY.

In such a case, although no special damages are alleged, the plaintiff being an ordinary mechanic, testimony showing the difference between the wages earned by him before the injury, and those he was able to earn afterwards, is competent to show the extent of his injuries. Such testimony is not proof of special damages.

3. SAME—INSTRUCTIONS—DEGREE OF CARE.

The court having instructed the jury at the commencement of the charge that an employer is bound to exercise reasonable care and diligence in providing a safe place for his employes to work, it is not error to refer to the matter without using the word "reasonable," in giving instructions on other questions.

At Law. Motion for new trial.

*A. J. Rogers,* for plaintiff.

*O'Brien, Eller & O'Brien,* for defendant.

BREWER, J. In the case of Conner against the Pioneer Fire-proof Construction Company, tried before me, wherein the jury returned a verdict for the plaintiff, a petition for a new trial was allowed. I was in hopes that this application would be submitted to Justice MILLER, as the case is one upon which I have great doubt. The facts, in a general way, are these: The plaintiff was employed as a tiler in the West Hotel, in Minneapolis, the defendant having the contract for the tiling. In pursuance of that work, it was necessary for the tilers to go upon a platform in order to reach the ceilings, which were quite high. In some of the rooms the ordinary horses used by the plasterers were high enough so that they could reach the ceiling; in others, these horses were not sufficiently high, so they were in the habit of extending the legs by nailing boards upon them, which raised the height of the horses, and consequently of the platforms. Upon a platform placed upon horses thus raised, the plaintiff, with other tilers, went to work. Scarcely had he gotten thereon before something gave way, the platform fell to the floor, and he was injured.

It was claimed on the part of the plaintiff that one of the boards thus nailed was defective, and insufficient to support the weight that was put upon it; and that there was negligence on the part of the defendant in sending the plaintiff onto a platform thus defectively supported.

There was testimony showing that a man by the name of Simpson and his son were employed specially to prepare the platforms; and, on the other side, there was testimony showing that the tilers themselves had charge of the preparation of these platforms; that the horses, boards, and platforms were all there, and that the duty was placed upon the tilers generally to see to the preparation of their own platforms. The jury found for the plaintiff.

I charged the jury, substantially, that if the defendant had furnished the material, horses, boards, and platforms suitable and sufficient, and left with the tilers generally the duty of preparing their own platforms, and this platform, so prepared, was defective, that was the negligence of the employes, and the employer would not be liable; while, on the other hand, if the employer had employed special individuals—Mr. Simpson and his assistant—to attend to the work of preparing the platforms, and they failed to prepare a platform that was reasonably safe, their negligence was the negligence of the defendant, and the company would be responsible. That is really the pivotal question in the case, and it is one that, upon all the testimony, has greatly embarrassed me. I consider that a very important question; in fact, if the matter were left to my judgment alone, I think I should be compelled to say that the preponderance of the testimony showed that the company left the preparation of the platforms to the tilers as a body, and had no special employes, or any particular individuals, to do that work. But there was the positive testimony of one or two witnesses that Mr. Simpson and his son were specially employed to do that work, and to attend to it solely; and what has embarrased me is whether or not I was justified in holding that there was sufficient evidence to uphold the action of the jury in finding that Mr. Simpson and his assistant were the parties upon whom this special work was cast.

Wherever there is a manifestly doubtful question of fact,—one that I feel a jury may, without any impropriety, find one way or the other, according as they believe that witness or this,—I never stop to review the action of a jury in its finding. In this case it has seemed to me uncertain whether it could be held that there was such a question. That was the reason I was in hopes that my Brother MILLER would take this record, look at it, and pass his opinion upon it. As he did not, I must dispose of the case, and I have concluded that the testimony is sufficient to justify the action of the jury, and that the direct testimony of the fewer number of witnesses as to this special employment of Mr. Simpson and his assistant did present such a question of fact that I ought not to interfere with the decision of the jury in this respect.

That, as I said, is the pivotal question in the case. Several other matters are suggested, but it seems to me they are of minor significance.

It is insisted that the general scope and drift of the charge was such as to convey to the minds of the jury the idea that there was an absolute duty on the part of the employer to make the place of work safe, which, of course, is not the law. It is his duty to use reasonable care and diligence to provide a place of safety. At the commencement of my charge

I so stated the law. It is true that subsequently I did not every time use the word "reasonable," in speaking of this matter; because, having once laid down the rule, and realizing that the real question was as to whether that was in this case a duty borne by the employer, or cast upon the entire body of employes, I was trying to make plain to the jury the distinction between these two phases of the case. I do not conceive it to be the duty of the court every time it refers to a matter to incorporate all the limitations and all the restrictions which apply thereto, when they have been once stated. Such a repetition would be very apt to confuse, rather than enlighten, the jury.

Further, it is insisted that no testimony should have been allowed to go to the jury as to the wages this plaintiff was earning prior to the accident and those he was able to earn thereafter. The petition does not allege any special damages. This plaintiff was an ordinary mechanic, and the testimony presented was to show the nature of his injuries, rather than to lay the foundation for any special compensation. I doubt not that if the plaintiff had been one gifted with some peculiar skill in the hands, or otherwise, as, for instance, a painter, who by his skill in the use of the brush is able to earn enormous sums of money, and thereafter, when that ability to earn is taken away by physical injury, he seeks relief to the extent of such loss, there should be a special allegation in the pleading, so as to call the attention of the defendant particularly to the claim. But when the case is that of an ordinary mechanic, (a mason,) and the question presented is simply as to the extent of the injuries suffered, I think the defendant is not prejudiced if, even without an allegation of special damages, the plaintiff is permitted to introduce testimony as to what he was able to earn before and after the accident. It is not one of those matters which I think, in the strictest and more technical sense, can be said to be special damages. At least, the error, if error it be, in admitting the testimony, did not work any substantial injury to the rights of the defendant.

There are one or two other matters of a similar nature that are suggested, but, as I stated before, the pivotal question is as to whether the defendant placed the work of preparing these platforms with the tilers, as a body, thus making them responsible for their construction; or whether it employed some other individuals to do it for them. That question the jury have determined, and I am constrained to say I think there was sufficient testimony to justify that conclusion.

Motion for new trial denied.