JACOB KIMMER, as Administrator of WILLIAM KIMMER, Deceased, v. JOHN WEBER et al., Copartners, etc., Appellants.

1. MASTER AND SERVANT — DETAIL OF SERVANT'S WORK.    There is no presumption that a contractor for the mason work of a building is required, as between him and his working masons, to construct a platform for his masons to stand on while pointing the interior of a room; but where he has furnished suitable materials therefor, the construction of the platform is ordinarily an incidental detail of their work, to be performed by the masons themselves.

2. CONSTRUCTION OF SCAFFOLD.    If a master furnishes his servants suitable materials for the construction of a scaffold or platform on which to do their work, and the servants voluntarily construct it according to their own judgment, the master is not liable to the servants for the manner in which they used the material.

3. NEGLIGENT PERFORMANCE OF DETAIL OF WORK.    A master is not responsible to his servant for the negligent performance of some detail of the work intrusted to the servant, whatever may have been the grade of the servant who executed such detail; if it is the work of the servant, and he volunteers to perform it and the master is not at fault in furnishing proper materials, there is no breach of duty on the part of the latter.

4. FOREMAN AS CO-SERVANT — ERROR OF JUDGMENT AS TO DETAIL OF WORK.    If, when workmen have voluntarily constructed, according to their own judgment, a temporary platform for which suitable material has been furnished by their master, their foreman is informed by a third party that an appliance theretofore used by such party, and

inserted by the workmen in their structure of their own accord, but not furnished by their master, is insufficient, and the foreman unites with the workmen in determining that the structure is safe, they are so far co-servants, and such determination, being at most an error of judgment with respect to a detail of the work, does not render the foreman guilty of negligence, attributable to the master, in permitting the workmen to use the platform.

5. NEGLIGENCE — VOLUNTARY USE BY SERVANT OF APPLIANCE NOT FURNISHED BY MASTER. A master is not liable for a personal injury sustained by his servant through the giving way of an appliance voluntarily used by the servant and his co-servants in constructing a temporary platform on which to do their work, and for which suitable materials had been furnished by the master, where it is not shown that it was the duty of the master to construct the platform, but it appears that such duty was assumed by the servants as a detail of their work, and it is not shown that the master or his representative actually constructed or directed the construction of the platform, or that the appliance which gave way was part of the material furnished by the master or intended by him to be used.

*Kimmer* v. *Weber*, 81 Hun, 599, reversed.

(Argued December 11, 1896; decided January 19, 1897.)

APPEAL from a judgment of the General Term of the Supreme Court in the first judicial department, entered December 1, 1894, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial.

This action was brought to recover damages sustained by the death of plaintiff's intestate through the alleged negligence of defendants.

The facts, so far as material, are stated in the opinion.

*Hamilton Wallis* for appellants. The motion for a dismissal of the complaint should have been granted, as it appeared by the plaintiff's testimony that the defendants were in no wise negligent, and that the accident was to be attributed directly to the negligence of the fellow-servants of the deceased. (*Hussey* v. *Coger*, 112 N. Y. 618; *Davidson* v. *Cornell*, 132 N. Y. 228; *McCampbell* v. *C. S. Co.*, 144 N. Y. 552; *Dobbins* v. *Brown*, 119 N. Y. 188; *Cosulich* v. *S. O. Co.*, 122 N. Y. 118; *Borden* v. *D., L. & W. R. R. Co.*, 131 N. Y. 671.) The foreman, Turner, was not the defendants' repre-

sentative, and they are not liable for his negligence. (*Hussey* v. *Coger*, 112 N. Y. 620; *Cullen* v. *Norton*, 126 N. Y. 1; *Hankins* v. *N. Y., L. E. & W. R. R. Co.*, 142 N. Y. 416; *Hogan* v. *Smith*, 125 N. Y. 774; *Butler* v. *Townsend*, 126 N. Y. 105; *Loughlin* v. *State*, 105 N. Y. 159.)

*E. B. Barnum* for respondent. The motion for a nonsuit was properly denied. (*Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 368; *McGovern* v. *C. V. R. R. Co.*, 123 N. Y. 280; *Hankins* v. *N. Y., L. E. & W. R. R. Co.*, 142 N. Y. 416; *Bailey* v. *R., W. & O. R. R. Co.*, 139 N. Y. 302.)

O'BRIEN, J. The plaintiff's intestate was an apprentice in the employ of the defendants, who were builders. This young man was killed on the 16th of February, 1891, by the falling of a scaffold used by the defendants' workmen in their business. The question was whether the accident was the result of negligence on the part of the defendants. The jury found that it was, and the inquiry is whether the proofs in the case sustain the finding. The defendants had a contract for the mason work of a brewery, which was in process of erection. There was also a gang of carpenters and a gang of plumbers at work upon the building, each under separate contracts with the owner. The plumbers engaged in fastening pipes upon the ceilings of the different floors made use of a scaffolding which had been constructed for them by one of the carpenters. It was first used in the cellar, then removed to the first floor and used for the same purpose, and then taken down and removed to the floor above. The ceiling of this floor being higher than the others, the plumbers found it necessary to raise the height of the scaffolding. They procured the same carpenter to make the change. This was done by extending the uprights by means of pieces of timber nailed to them and fastened by cleats. It seems in that form to have answered all the purposes of the plumbers. It consisted of three planks supported on crosspieces fastened to the uprights, and was left by the plumbers in the room when they had completed

their work. · Neither the defendants nor any of their employees had anything whatever to do with the construction or use of the scaffolding. About two weeks before the accident the defendants sent a gang of masons to the building, of which the deceased was one, to point up the arches of the ceiling. The defendants' foreman gave the men instructions to make a scaffolding for themselves with three horses furnished by defendants, by placing planks on two of them and using the third to extend the scaffold as they passed around the room.

The place furnished to the masons to do the work was in a general sense the room or second floor of the building, and it is not claimed that this place was in any sense unsafe. The erection of the scaffolding was a detail of the work which it is apparent devolved upon the workmen themselves as they needed it to move around the room. It is not claimed that the defendants failed to provide proper material for the construction of such a scaffolding. The workmen, of whom the deceased was one, constructed the scaffold according to their own judgment. They used this plumbers' scaffold for one side of it and placed a structure against the wall for the other side. From this structure to the plumbers' scaffold crosspieces were placed upon which planks rested to accommodate the workmen. The scaffolding thus constructed was used for about two weeks and moved about the room as occasion required, all of which seems to have been done by the workmen themselves.

The crosspieces, or some of them, seem to have been heavy pieces of timber, and on the day of the accident two of the workmen were engaged in putting one of these timbers in place. While so engaged one of the men let fall the end of the heavy timber that he was holding and it crushed by its sudden fall and broke one of the crosspieces of the plumbers' scaffold. This caused the whole scaffold to fall, resulting in the injury and death of the plaintiff's intestate.

The accident was evidently caused by the neglect of the workmen who were handling the timber or by some defect in the crosspiece of the plumbers' scaffold. If the accident is

to be attributed to the act of the workmen who were engaged in putting the timber in place there is nothing in the case to show that the defendants are liable for the misconduct. They were co-servants, and nothing appears to charge the defendants with negligence either in employing them originally or in retaining them. It is not suggested that the judgment can be upheld on such grounds.

The judgment must stand, if at all, upon the fact that the plumbers' scaffold was used as a part of the scaffolding for the masons and that it was insufficient. When the case is examined in that light it will be found, we think, that there was no proof of negligence on the part of the defendants to warrant the submission of the question to the jury.

It does not appear that the defendants constructed the plumbers' scaffold or furnished it, or directed the workmen to use it. On the contrary, it appears that this scaffold was a contrivance adopted by the workmen themselves. It does not appear that they were obliged to use it. When a gang of masons are engaged in plastering or pointing a room, the construction of proper platforms or places upon which to stand while doing the work is one of the details of the business that is generally left to the workmen themselves. The master may, it is true, take this out of their hands and assume to do it himself, and in that case he would be bound to furnish an appliance reasonably safe and suitable for the purpose. But in this case it does not appear that the master was required to furnish the platform or that he did furnish it, nor does it appear that there was any neglect or failure to furnish proper or suitable material for that purpose. It required horses, crosspieces and plank and the means to put them in place. The evidence indicates that all these things were on hand and that they were used by the workmen according to their own judgment. In constructing the scaffolding they made use of another, which had been constructed previously by the plumbers for their own purposes, and which proved for them safe and sufficient. If this contrivance was defective or insufficient for the new use to which it was applied, and there is no

proof of that except the fact that one of the crosspieces broke under the weight of a falling timber, it is difficult to see how the master can be held responsible. The scaffolding having been constructed by the workmen themselves, or under their direction, if the appliances which they made use of for that purpose were in any respect defective or insufficient, they had, so far as appears, the same means of knowing that fact as the defendants. It was not enough to prove that the scaffolding gave way under the circumstances, resulting in an accident, or that it was in fact defective, unless it was made to appear that this was the proximate result of some omission of duty on the part of the defendants or their foreman. If they furnished suitable materials for the construction of a proper platform, and the workmen themselves constructed it according to their own judgment, the defendants were not liable for the manner in which they used the material so furnished. (*Hussey* v. *Coger*, 112 N. Y. 618 ; *Webber* v. *Piper*, 109 N. Y. 496 ; *Hogan* v. *Smith*, 125 N. Y. 774 ; *Cregan* v. *Marston*, 126 N. Y. 568 ; *Butler* v. *Townsend*, Id. 105 ; *Harley* v. *B. C. M. Co.*, 142 N. Y. 31 ; *McCampbell* v. *Cunard S. S. Co.*, 144 N. Y. 552.)

The master is not responsible for the negligent performance of some detail of the work intrusted to the servant, whatever may have been the grade of the servant who executes such detail. If it is the work of the servant, and he volunteers to perform it, and the master is not at fault in furnishing proper materials, there is no breach of duty on the part of the latter. (*Cullen* v. *Norton*, 126 N. Y. 1 ; *Hankins* v. *N. Y., L. E. & W. R. R. Co.*, 142 N. Y. 416.)

There is some evidence in the case to the effect that, when the masons were at work on this scaffolding, one of the plumbers called the attention of the defendants' foreman to the fact that the plumbers' scaffold, which was part of that used by the masons, was insufficient, and that the foreman replied that he thought it would do. This the foreman denies, and says that he was not aware that the plumbers' scaffold was in use till after the accident.

But, assuming that his attention was so called to the matter, as testified to by this witness, was the foreman guilty of negligence, attributable to the master, in permitting the workmen to go on with the work upon the platform that they had erected to suit themselves? If his judgment was wrong with respect to the sufficiency of the platform, so was that of the workmen. They knew as much with respect to the safety of the place where they stood as he did. None of the masons suggested to any one that the scaffold was unsafe. Whatever was said on that subject was by one of the plumbers when he saw the men using their scaffold. If, under these circumstances, the foreman had refused or declined to interfere with what had been done by the workmen, and he trusted to their judgment, it was not such negligence as to charge the defendants with the result of the accident. It was, at most, but an error of judgment on the part of the foreman with respect to a detail of the work in which the masons were engaged. He concluded, as the workmen themselves did, that the place was safe, and in determining that question they were all co-servants.

We think that the plaintiff failed to make out a case for the consideration of the jury for these reasons: (1) It was not shown that it was the duty of the master, under the circumstances, to construct the platform on which the masons were to do the work. (2) The proof shows that this duty was assumed by the workmen as one of the details of the work. (3) It was not shown that the defendants, or their foreman, actually constructed or directed the construction of the platform. (4) It was not shown that the plumbers' scaffold which gave way was any part of the material furnished by the defendants or the foreman, or that they contemplated the use of it for the purpose to which it was put.

It did not belong to the defendants, but was in the building; and if the workmen made use of it for the purpose, without any direction from the defendants, or any knowledge on their part, the result is not chargeable to the master. It appears to have been in use for ten days by the masons, who

moved it about the room from place to place as the work required, and it gave way only when a large beam was allowed to fall upon it by one of the workmen. The proof, as it appears in the record, was not sufficient to warrant a finding of negligence against the defendants.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except GRAY, J., dissenting.

Judgment reversed.