(18 App. Div. 243.)

## WATTS v. BEARD et al.

(Supreme Court,. Appellate Division, Second Department. June 8, 1897.)

MASTER AND SERVANT—INJURY TO SERVANT.

    While plaintiff was assisting other employés of defendant in hoisting a machine by means of a chain attached to an eyebolt, which one of the men had screwed into the ceiling for that purpose, and not for permanent use, the eyebolt pulled out, either because the man who put it up bored too large a hole for it, or because of the condition of the timber at the place where the hole was made, but not because of any defect in the eyebolt, and the machine fell on plaintiff. *Held*, that plaintiff's injury was caused by the negligence of his fellow servants.

Appeal from trial term, Kings county.

Action by William Watts against Francis D. Beard and others, as executors of and trustees under the will of William Beard, deceased, for personal injuries. From a judgment entered on the dismissal of the complaint, and from an order denying a motion for a new trial, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Sanders & Gray (Arthur M. Sanders, of counsel), for appellant.

Nadal, Smyth, Carrére & Trafford (Perry D. Trafford, of counsel), for respondents.

BRADLEY, J. The plaintiff, while in the service of the defendants, sustained a personal injury, which he charges was occasioned by their negligence. The business was the operation of two elevators, upon premises in the city of Brooklyn, known as the "Beard Stores," in elevating grain out of boats, and discharging grain from the warehouse into vessels. The plaintiff was fireman of the stationary engine at one of the elevators, in which service he had been engaged for nearly two years preceding July 5, 1894, when the accident in question occurred. He was directed by the engineer to assist in affixing a new condensing pump to the engine at the other elevator. This was a cast-iron pump, weighing about 800 pounds. By the direction of the engineer, he proceeded to break through a place in the concrete floor for the pump. The machinist of the defendants, one of the workmen, having bored a hole in the ceiling, screwed into it an eyebolt, to which was attached a fall chain for hoisting the pump. In doing this, the plaintiff, by direction, assisted; and, when the pump was raised about three feet from the floor, the eyebolt was, by the weight upon it, drawn out of the ceiling, and the pump fell onto the plaintiff, causing his injury. Upon this state of facts, the question arises whether this accident was the consequence of the failure of the defendants to perform any duty which they owed to the plaintiff in his relation to them in the service.

The principles applicable to the relation of master and servant bearing upon the questions presented for consideration are so well settled as to require no extended statement of them. While the servant assumes the ordinary hazards of the service in which he is engaged, including those resulting from the negligence of his co-employés, the master undertakes to use reasonable care in provid-

ing a safe place for him to do the work assigned to him, and to supply him with suitable implements and appliances. There is no question about the competency of the plaintiff's co-employés, nor of the strength and sufficiency of the eyebolt. The difficulty arose from the failure to securely fasten it in the ceiling for the purpose designed. If this preparation for the work of hoisting the pump was within the duties of the defendants, then whoever did it represented them, and the negligence was theirs. This is the contention of the plaintiff's counsel, by whom it is insisted that they failed to use the care required of them to afford to the plaintiff a safe place for his work. When the men commenced the performance of the work of adjustment of the pump, there was no want of safety in the situation or in the existing conditions at the place where this was to be done, nor was there any defect in the appliances employed in the work. The accident arose from the failure to make such use of them as to give safety to its performance. It is not important to inquire whether the failure of the eyebolt to retain its place in the ceiling was attributable to the use of a larger-sized bit than should have been used, or to an unsubstantial condition at the place in the wooden ceiling where the hole was made for it. The eyebolt was not designed as a permanent attachment to the ceiling, or for subsequent use in the business of the defendants. It was adopted as a temporary expedient for the occasion,—employed as a means to accomplish the purpose then in view, and the use made of it was within the details of the work which the workmen were proceeding to perform. In that view, any negligence to which the plaintiff's injury may have been attributable was not that of the defendants, but was that of his co-employés, one or more. Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905; McCampbell v. Steamship Co., 144 N. Y. 552, 39 ·N. E; 637; Kimmer v. Weber, 151 N. Y. 417, 45 N. E. 860. Although the engineer was foreman in the work, and the plaintiff acted entirely under his ·direction, he was, nevertheless, a co-employé of the plaintiff. Loughlin v. State, 105 N. Y. 159, 11 N. E. 371. It does not seem important that the plaintiff personally had nothing to do with the act of putting the eyebolt into the ceiling. It was done in the process of the work, and was incidental to its performance. The cases cited on the part of the plaintiff do not seem to necessarily aid him upon the facts as they appear in the evidence. In Benzing v. Steinway, 101 N. Y. 547, 5 N. E. 449, the platform which gave way had been constructed some time before, and the accident was attributable to a defective board in it. In Kranz v. Railway Co., 123 N. Y. 1, 25 N. E. 206, the trench in which the plaintiff's intestate was put to work had been opened preparatory to his work in it, and it was held that the exercise of due care to render the place safe for his work was the duty of the defendant. Those two cases are distinguishable in principle from the present one. In the Benzing Case the jury were permitted to find that the accident was the consequence of the failure of the defendant to provide suitable material for the platform. And, as the court there said, the evidence failed to disclose the previous history of the structure used as a platform, which it appeared had been manufactured and lain for some time previous-

ly to the accident, in the boiler room. It was not a temporary structure made for the occasion on which it was being used at the time of the occurrence there in question.

Much reliance seems to be placed upon Tomaselli v. Cycle Corp., 9 App. Div. 127, 41 N. Y. Supp. 51. There the cast-iron bar which was an appliance furnished for use in the work was defectively unfit for the purpose for and to which it was applied. Its frailty was the cause of the accident. It was there held that the question whether the master was chargeable with the want of due care in that respect was one of fact for the jury. That case, therefore, is distinguishable from the one at bar. There was also, upon the evidence in the Tomaselli Case, the further element that the purpose of the structure there in question was not confined to its use on a single occasion, but the object in view was its employment as long as the then-existing emergency required it.

These views lead to the conclusion that the judgment and order should be affirmed. All concur.