found due the estate by the referee, would leave that amount $324.73, instead of $767.87. In all other respects the findings and conclusions of the referee and the decree of the surrogate's court entered thereon meet with our approval. The decree appealed from should, therefore, be modified by deducting from the amount found due the estate of Sarah Ann Rector, deceased, the sum of $443.14, and, as thus modified, affirmed, without costs of this appeal to either party. All concur.

(64 App. Div. 134.)

### RAGER v. DELAWARE, L. & W. R. CO.

(Supreme Court, Appellate Division, Fourth Department. July 23, 1901.)

APPEAL—ISSUES NOT PRESENTED IN TRIAL COURT.

  Where, in an action by an employé for injuries, the controverted issue is whether defendant had furnished suitable planks available to its workmen for temporary staging, it is too late to inject into the case on appeal a claim that such temporary staging was not constructed within the requirements of the labor law.

Appeal from trial term, Erie county.

Action by Joseph Rager against the Delaware, Lackawanna & Western Railroad Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

Minor K. Johnston and H. Ford White, for appellant.
Louis L. Babcock, for respondent.

SPRING, J. This action was commenced February 28, 1900, to recover for injuries alleged to have been sustained by the plaintiff by reason of the negligence of the defendant. The plaintiff is a carpenter, and a skilled car repairer, and had been at work in that capacity for the defendant, prior to the accident, for more than four years. The defendant operated a shop for the repair of cars, which was 300 feet by 150 feet, and about 30 feet in height. There were in the building three parallel repair tracks, the distance between each being 13 feet. On each side of each track was a permanent scaffolding, suspended by rods from the roof of the building, reaching to within 10 feet of the floor. Each track would hold seven cars, and the workmen stood upon this scaffolding while engaged in repairing the sides and roofs of the cars. If it was necessary to work upon the end of a car, a temporary staging was provided by laying planks across the stationary scaffolding at the end of the car on which the repairs were to be made. This method of doing the work had been carried on for 20 years, and, so far as appears, without injury to any employé. The planks for the temporary scaffold were obtained from a lumber shed opposite the car shop, and in which was kept an abundance of suitable planks for this purpose. The men who were doing the repairing got the planks when necessary, and bridged the 11 feet of space between the permanent scaffolds. On the morning of February 17, 1900, the plaintiff, with three other men, was engaged in repairing cars for the defendant. About 9

o'clock in the morning he was directed by the foreman to go to work on the roof of a certain car, and a plank had already been laid across at the end of the car, resting on the permanent scaffolds, making the place for the plaintiff to stand on to do the work. Brown, the foreman, was on this plank, and the plaintiff, with two others,—making four in all,—got upon it with him, and they were at work putting tin on the roof of the car when the plank broke, precipitating them to the ground, and dislocating and bruising plaintiff's ankle. The question sharply contested was as to the condition of the plank upon which plaintiff and his fellow workmen were standing at the time it broke. It was a pine plank, about 2 inches thick, and 12 to 14 feet in length, and the plaintiff's evidence tended to show it was decayed on the under side as it lay on the scaffolding; while the defendant's witnesses testified it was sound, and the break was clean cut, and not due to any defect in the plank. That question was submitted to the jury, and the verdict establishes that the plank was sound. In view of the testimony that was uncontradicted, I think that the plaintiff did well in getting his case, in this aspect of it, anyway, to the jury at all. It had been the unvarying practice of the men to get and place in position the planks whenever they were required in carrying on the work. The master performed its duty by providing those suitable for the purpose. The plaintiff was a skilled workman, familiar with the manner of doing the work, and the men engaged with him were his co-employés; and, if a defective plank was taken, when there were others appropriate for the work, the oversight or carelessness was that of a fellow workman, for which the defendant is not responsible. Placing the plank in position was a mere detail of the work, and the fact that plaintiff went upon it under the direction of the foreman does not charge the defendant with liability for the injury inflicted upon the defendant by the plank breaking, even though it may have been unsound. Kiffin v. Wendt, 39 App. Div. 229, 57 N. Y. Supp. 109; Kimmer v. Weber, 151 N. Y. 417, 45 N. E. 860. The manner of doing the work on this occasion was precisely the same as had been in vogue in this shop for many years. There is no claim that the plank was placed any differently, or that the staging it made was less in width, than was usual, and the only criticism is that it was not a sound plank. Again, the undisputed evidence shows that it was a rule of the defendant of long standing that no more than two men should be upon one of these planks at the same time, and the plaintiff was aware of this rule. Yet this plank was loaded down with four men at the time of the accident. The fact that plaintiff was there by order of his immediate superior does not operate to make the defendant liable, as he knew the direction was in open disregard of its rule.

The principal point urged by the appellant is that this temporary staging was not constructed in compliance with the requirements of the labor law (sections 18, 19, c. 415, Laws 1897). Section 18 of that act imposes the duty upon the master—and it is a power that cannot be delegated—to furnish and erect suitable scaffolding for his men; and by section 19 it "shall be so constructed as to bear four

times the maximum weight required to be dependent therefrom or placed thereon." That what before this enactment had been construed to be a mere detail of the work is now an absolute duty resting upon the master. See McLaughlin v. Eidlitz, 50 App. Div. 518, 64 N. Y. Supp. 193; Stewart v. Ferguson, 164 N. Y. 553, 58 N. E. 662. There has been no motion for a new trial in this case, and the only question for us to consider is the exceptions, and ascertain if the plaintiff has an exception which raises the point now urged upon us. The court states in his main charge that the plaintiff had no right to assume the scaffolding was safe, and this was excepted to, and certainly that does not raise the question. The next is the request relating to latent defects about which there was no proof, and the labor law was not then in the mind of the counsel. And the last exceptions pertain to the capacity in which Brown, the foreman, was acting at the time,—whether a co-employé; also as to the effect of his direction to the plaintiff to go upon the staging. There is nothing in any of the requests containing a hint to the trial judge that the counsel was seeking to recover because of the failure of the defendant to meet the conditions imposed upon it by the statute mentioned. The action was commenced and tried throughout without any intimation that any different liability attached to the defendant than would have been applicable had this statute never been enacted. Upon the trial the controverted question of fact was whether the defendant had furnished suitable planks available to its workmen for the temporary staging. Had it fulfilled its duty to the plaintiff by providing a proper place for him to do the work which it assigned him to perform? After having tendered that issue, and been unsuccessful, it is too late for the plaintiff upon this appeal to inject into his case another distinct element adding to the liability of the defendant, and which it has never been called upon to meet. Where a case has been tried upon a definite line, the appellate court cannot grant a new trial upon the assumption that the plaintiff might have succeeded had another theory been adopted, but which was not suggested upon the trial. The judgment should be affirmed, with costs to the respondent.

Judgment affirmed, with costs. All concur.